UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 SEP 13 PM 1:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN LEE )
 )
  Plaintiff, )
 )
v. ) CASE NO. CV-99-B-3125-S
 )
PEMCO AEROPLEX, INC. )
 )
  Defendant. )
 )

ENTERED
SEP 1 3 2001

### MEMORANDUM OPINION

Currently before the court are Defendant Pemco Aeroplex, Inc.'s Motion for Summary Judgment and Plaintiff John Lee's Motion for Partial Summary Judgment. Plaintiff John Lee ("plaintiff" or "Lee") asserts claims of disability discrimination against Pemco Aeroplex, Inc.("defendant" or "Pemco"), under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq.* ("ADA") and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. (Pl. Compl. ¶ 3.) Upon consideration of the record, the submission of the parties, the arguments of counsel,[1] and the relevant law, the court is of the opinion that both Motions are due to be denied.

### FACTUAL STATEMENT

Pemco is engaged in the business of aircraft overhaul and modification, and employs approximately 1400 people. All applicants for employment at Pemco must first fill out an application at the Alabama State Employment Office ("ASEO"), wherein they list their job

---

[1] At oral argument, the court expressed its inclination to grant defendant's motion for summary judgment. However, after further consideration of the relevant law, the court is of the opinion that genuine issues of material fact preclude summary judgment.

36

experience, training, education, etc. The ASEO interviews the applicant to determine what type(s) of jobs the applicant qualifies for and seeks. When the need arises to hire employees, Jim Hardin ("Hardin"), the Employment Recruiter and Compliance Manager at Pemco informs the ASEO of Pemco's need for people in a certain position. If the ASEO determines that a particular applicant is a good candidate for the position Pemco seeks to fill, the ASEO sends the applicant to Pemco for an interview. If Pemco decides to hire the applicant, then the applicant receives an offer of employment contingent on the results of a physical examination and drug screening performed by a physician, pursuant to a contractual relation with Pemco. If the physician approves the applicant for employment for that particular position and the applicant passes the drug test, Pemco employs the applicant.

In early to mid 1998, plaintiff sought employment at Pemco, and completed the ASEO application. The ASEO sent plaintiff to Pemco for an interview for a fiberglass laminator position on September 15, 1998. When he arrived, he was told that the position had already been filled. Sometime in early March, 1999, David Page at Pemco contacted plaintiff about interviewing for a depainter position. On March 5, 1999, Page interviewed plaintiff for the position and offered him the job conditioned upon plaintiff passing a physical examination. Later that day, Pemco sent plaintiff to Dr. Steve Hankins, at Carraway Methodist Medical Center.

After the examination, Dr. Hankins telephoned Don Driggers, Pemco's Manager of Program Safety, and informed him that he would not recommend plaintiff for the depainter position. Driggers testified that nothing else was said in this conversation. Driggers then informed Page of the doctor's decision, and Page decided not to hire plaintiff. Page testifed that

this decision was based on Pemco's corporate policy providing that applicants who are not recommended for employment for a particular job cannot be hired for that job.

Plaintiff had previously undergone carpal tunnel release surgeries on each wrist: one in 1993, and the other in 1995. It is undisputed that plaintiff truthfully told Dr. Hankins that he had been performing jobs requiring repetitive work with his hands since his surgeries and had experienced no problems. Dr. Hankins's examination revealed that everything was normal, including plaintiff's wrists. Dr. Hankins did not perform a functional capacities evaluation, which would have assessed plaintiff's ability to perform the job for which he was being considered. Based solely on plaintiff's history of carpal tunnel syndrome, Dr. Hankins recommended that plaintiff not be hired for the depainter position. Dr. Hankins's finding and recommendations state:

> It is my medical opinion that the individual will be [at] risk of reinjury with repetitive work. Even if screening was done and [patient's] results were negative, the risk is still high for reinjury with repetitive work. I would not recommend this individual performing the duties of a depainter.

Dr. Hankins testified that he felt that plaintiff should not do repetitive work for more than half the work day. Page, Pemco's Manager of Training, testified that there is no job at Pemco that would not require repetitive work with hands for more than half the work day. Dr. Mary Kessler, a vocational expert, states that a perception of plaintiff as being unable to perform repetitive work would restrict him from working a broad range of jobs. Such a perceived disability would preclude access to 98,878 jobs in the Birmingham metropolitan area and 489,784 jobs in Alabama. On a percentage basis, such a perceived disability would decrease his access to jobs in Alabama from thirty-six percent of the jobs in the state, with no perceived

3

disability, to only thirteen percent of the jobs, with his perceived disability.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

A plaintiff advancing a claim of employment discrimination under the ADA must make a prima facie case establishing that (1) he has a disability, (2) he is a qualified individual, that is, able to perform the essential functions of the employment position that he holds or seeks with or

without reasonable accomodation, and (3) the defendant unlawfully discriminated against him because of the disability. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11 th Cir. 2000). The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or, (C) being regarded as having such impairment. *See Hilburn v. Murata Electronics N.A., Inc.*, 181 F.3d 1220, 1226 (11 th Cir. 1999)(citing 42 U.S.C. § 12102(2)). An impairment is not a disability unless it substantially limtis one or more of the major life activities. "Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). With respect to the major life activity of working, the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

In its Motion for Summary Judgment and Brief in Support, defendant argues that plaintiff has not established a prima facie case of disability discrimination because he does not have a disability under the ADA. Plaintiff admits that he has no actual disabling physical or mental impairment under 42 U.S.C. § 12102(2)(A), and there is not sufficient evidence to support a finding that plaintiff has a record of disability under 42 U.S.C. § 12102(2)(B). Thus, plaintiff is not disabled under 42 U.S.C. § 12102(2) unless he can show that he is being regarded as having an impairment that substantially limits one or more of his major life activities.

Plaintiff has presented sufficient evidence upon which a reasonable jury could find that Dr. Hankins regarded plaintiff as being disabled. Under the ADA, Pemco is liable not only for its own discriminatory treatment of a qualified applicant or employee, but also for participating

5

in a contractual or other arrangement or relationship that has the effect of subjecting a qualified applicant or employee with a disability to discrimination. 42 U.S.C. § 12112(b)(2). The regulations provide:

> Accordingly, it would be a violation for an employer to participate in a contractual relationship that results in discrimination against the employer's employees with disabilities in hiring . . . This provision applies whether or not the employer or other covered entity intended for the contractual relationship to have the discriminatory effect.

29 C.F.R. § 1631.6. This ADA provision applies to contractual relations between the employer and health-care provider for performing post-offer physical examinations. *Holiday v. City of Chattanooga*, 206 F.3d 637, 640-41 (7th Cir. 2000)(holding that the district court erred in holding that the employer had a right to rely on an independent doctor's unsubstantiated and cursory medical opinion and in treating the doctor's opinion as having settled the question of whether the applicant was qualified for the job). Under the ADA, the employer has a duty to make an individualized determination about the applicant's ability to perform the job for which he is being considered, and cannot relieve itself of that duty by contracting out the performance of it to a third-party. *Id.* at 644-45. Dr. Hankins's report creates a *question of fact* as to whether plaintiff was qualified to perform the essential functions of the depainter job. *See id.* at 645.

Because plaintiff has presented evidence by which a reasonable jury could find that Dr. Hankins and Pemco regarded him as being disabled, Pemco's Motion for Summary Judgment is due to be denied. Because there is a genuine issue of material fact, Plaintiff's Motion for Partial Summary Judgment is also due to be denied.

6

## CONCLUSION

Based on the foregoing, the court is of the opinion that Defendant Pemco Aeroplex, Inc.'s Motion for Summary Judgment and Plaintiff John Lee's Partial Motion for Summary Judgment are due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 13th day of September, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge